Charles Henry NICHOLS, Appellant,

v.

KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION and Sweet Hollow, Inc., Appellees.

Court of Appeals of Kentucky.

Oct. 12, 1984.

Sandra L. Mayes, Appalachian Research and Defense Fund of Kentucky, Inc., Barbourville, for appellant.

Paul F. Fauri, Gen. Counsel, William K. Moore, Cabinet for Human Resources, Frankfort, for appellees.

Before COMBS, GUDGEL and DUNN, JJ.

DUNN, Judge.

This appeal is from a judgment of the Laurel Circuit Court affirming the decision of the Kentucky Unemployment Insurance Commission that the appellant had acquiesced to changes in the terms and conditions of his employment and had, therefore, voluntarily quit his work with the appellee without good cause.

The appellant, Charles H. Nichols, was first employed by the appellee, Sweet Hollow, Inc., sometime in late 1981. At that time, the appellant agreed to work forty hours per week with his principal duties being the performance of carpentry and general maintenance activities. The appellant's starting salary was originally set at $125.00 per week, but upon the receipt of his initial paycheck, he learned that his employer had unilaterally reduced this amount by $25.00. Although he immediately questioned this alteration, the appellant subsequently accepted the appellee's explanation that no additional funds to pay him were available and continued on in his work without voicing any additional complaints in this regard.

The resignation of one of his coworkers, who had served as night watchman, approximately two or three weeks later, resulted in further modifications in the appellant's employment contract, when he agreed to temporarily assume the responsibilities of that position until a replacement could be found. As a result of this development, he found himself charged with a variety of new duties in addition to those originally assigned to him. These new responsibilities included the clearing of snow from access roads to the appellee's facility, attendance at the appellee's skating rink during the evening hours, and generally being "on-call" twenty-four hours a day, six days per week. This final aspect of the job, in particular, dictated that he actually take up residence on the appellee's premises. Accordingly, the appellee provided him with a one-room structure, which, with the apparent exception of heat, lacked most of the basic amenities. Most notably, the dwelling contained no kitchen facilities oth-

er than a hot plate and a coffee maker and was equipped with neither running water nor a bathroom. To make up for these deficiencies, the appellee furnished the appellant with a bucket of drinking water and a "pea can" and between the hours of 9:00 p.m. and 8:00 a.m. allowed him to use showers and restrooms in a spa which was located elsewhere on the property.

No recognition of his acceptance of these additional responsibilities and longer work hours was given by a concomitant increase in his salary of $100.00 per week. Other than the fact that on occasion the appellee gave him some clothing, particularly shirts, and allowed him to take his meals for free at its restaurant whenever that establishment was open for business, he received nothing extra. During a typical week the restaurant was normally open only two days.

Despite the apparent harshness of the new conditions of employment and circumstances in which he has now expected to live, the appellant continued to work for the appellee until October of 1982. Throughout this ten-month-long period, however, the appellant repeatedly reminded the appellee of the temporary nature of his assumption of the duties of the night watchman and expressed his need to return to the work arrangement under which he had originally been hired. When the appellee chose to ignore these communications, the appellant informed its president, Lester Finley, that he could no longer continue to live on the premises and wished to resume his normal forty-hour work week. Finley rejected the proposed return to the original contract for hire and the appellant consequently resigned his employment shortly thereafter.

Upon the termination of his employment in October 1982, the appellant filed a claim for unemployment benefits with the appellee, Kentucky Unemployment Insurance Commission. This claim was initially denied by a hearing examiner on the grounds that the appellant had voluntarily quit his job without good cause. That decision was subsequently reversed at a hearing before an appeals referee. Both the appellant and Lester Finley testified at the hearing. Appellant maintained that he had left his employment with good cause due to the appellee's failure to return to the terms of the original employment contract. Finley, however, asserted that there had never been any modifications in that agreement in that when he was first hired the appellant had accepted the duties and living conditions of which he now complained. It is also noteworthy that Finley confirmed the appellant's statement that during the course of his employment he had continually asked to be relieved of his additional responsibilities.

Based upon this testimony, the appeals referee granted the application for benefits and specifically found that the appellant had agreed to the changes in his work situation on a temporary basis only; that he had received no increase in his already small salary in recognition of his additional responsibilities and work hours; that he was expected to live in substandard housing; and, that he had frequently brought his unhappiness over these circumstances to the appellee's attention.

The appellee then sought review of that determination by the Kentucky Unemployment Insurance Commission. While adopting the referee's factual findings without exception, that body also concluded that the appellant had accepted the changes in the terms and conditions of his employment on a permanent basis as evidenced by his continuing to work under those circumstances for nearly a year. Accordingly, the Commission denied the claim for benefits, a decision which was later affirmed by the judgment in the Laurel Circuit Court from which this appeal is prosecuted.

In seeking the reversal of the Laurel Circuit Court's judgment affirming the Kentucky Unemployment Insurance Commission's denial of benefits, the appellant contends and frames the issues that those determinations were erroneous as they were not based upon substantial evidence and constituted an incorrect application of the law concerning the definition of good

cause. *See Brown Hotel Company v. Edwards*, Ky., 365 S.W.2d 299 (1962); *Southern Bell Telephone and Telegraph Co. v. Kentucky Unemployment Insurance Commission*, Ky., 437 S.W.2d 775 (1969). In regard to the first of these assertions, the appellant has based his attack on the Commission's finding of fact that he had worked for the appellee for nearly a year and had therefore accepted the alterations made in his original employment contract. The appellant argues that such a finding, which is fundamental to the ultimate conclusion that he voluntarily quit, is impossible in light of the Commission's other findings of fact. The appellee denies this assertion and requests the affirmance of the circuit court on this issue.

A survey of the evidence before both the Kentucky Unemployment Insurance Commission and the circuit court indicates that there was indeed no substantial evidence capable of supporting the proposition that the appellant had acquiesced in the changes in the terms and conditions of his employment. Prior to making this finding, the Commission adopted in their entirety the various factual determinations of the appeals referee, including the fact that the changes in the appellant's employment were to be of a temporary nature only and that the appellant frequently complained when the appellee refused to remedy this situation. As a result, the Commission's assessment that the appellant accepted the modifications in the circumstances of his employment would seem to be clearly in conflict with both its previous findings of fact and the evidence present in the record.

■ While the record before the Commission contains numerous references to both the appellant's temporary acceptance of his additional duties and his communication of his dissatisfaction with the appellee's failure to hire another worker to assume those responsibilities on a permanent basis, it is completely void of any evidence that the appellant had come to accept this state of affairs. In fact, the only evidence from which that conclusion is capable of being drawn is the fact that the appellant continued to work for the appellee for nearly one year after being assigned his additional job responsibilities, that one factor standing by itself, however, does not support the ultimate conclusion of acquiescence or voluntary quit since its import is negated by the Commission's parallel findings that the appellant assumed his increased duties only temporarily and consistently reminded his employer of that fact. Accordingly, the decision of the Laurel Circuit Court affirming the denial of benefits should be reversed due to the lack of substantial evidence in support of the Commission's ultimate conclusion that the appellant had quit without good cause.

■ Perhaps the most disturbing aspect of the Commission's reasoning that the appellant had acquiesced in the change in his employment and had thereby deprived himself of good cause to quit is the effect which the acceptance of such a theory could have upon the law of unemployment compensation. The principle is well-established that a worker faced with changes in his employment does not have good cause to quit without making a reasonable attempt to adjust to the new circumstances of employment. In *Kentucky Unemployment Insurance Commission v. Day*, Ky., 451 S.W.2d 656 (1970), for example, a worker was denied benefits on the basis of a voluntary quit when he refused to attempt to work on a newly converted production line. *See also City of Lancaster v. Trumbo*, Ky.App., 660 S.W.2d 954 (1983). Presumably this same rationale would have been applied to the appellant had he quit his job immediately upon being requested to temporarily take on the additional duties of the departing night watchman until a replacement could be found. This set of conflicting rules would, as a result, truly place a worker such as the appellant on the horns of a dilemma. Knowing that a refusal to attempt to work under proposed modifications in the circumstances of his employment would be construed as a voluntary quit, an employee would have no alternative but to accept the changes. Having done so, however, the employee would now

be faced with the very real possibility that the Kentucky Unemployment Insurance Commission could argue that he had acquiesced in the changes and, therefore, could not quit with good cause when he later discovered his inability to function in the new work situation. The unfairness of such a result is manifest and runs counter to the underlying philosophy of unemployment compensation which is to encourage individuals to work. The appellant made an honest attempt to do just that and, having subsequently discovered that the conditions of employment imposed by the appellee were unreasonable, he should not be penalized by the denial of unemployment benefits. *Wojcik v. Board of Review, Division of Employment Security*, 58 N.J. 341, 277 A.2d 529 (1971).

The appellant's second ground for attacking the denial of unemployment benefits is that decision to do so was founded upon an erroneous application of the law regarding the issues of voluntary quit and good cause. The essence of this argument is that the facts of the case now before the Court clearly fall within the definitions of good cause and voluntary quit as expressed in prior decisions of both the state and the Kentucky Unemployment Insurance Commission. The appellee, on the other hand, seeks to distinguish this dispute from those cited by the appellant and place it within the scope of prior decisions in which it was determined that the claimants of benefits had left employment voluntarily.

■ The starting point for any inquiry as to the existence of good cause for the leaving of employment is the definition of that term which this and other courts of this state have derived over the years. Generally, good cause for quitting can be said to exist when an employee is subject to "... circumstances so compelling as to leave no reasonable alternative but loss of employment." *Kentucky Unemployment Insurance Commission v. Murphy*, Ky., 539 S.W.2d 293, 294 (1976). In keeping with this formula, a person can not quit voluntarily unless the decision to do so is "... 'freely given' and 'proceeding from one's own choice or full consent.'" *Kentucky Unemployment Insurance Commission v. Young*, Ky., 389 S.W.2d 451, 453 (1965). Under these standards, therefore, the question of good cause is essentially one of reasonableness to be determined by the particular facts of each case. Earlier decisions on this issue do, however, provide some guidance and suggest that the appellant is correct in his assertion that he did have good cause for leaving his job.

While no identical factual situation is available, there are a variety of decisions in which circumstances far less dire than those involved in the case now before the Court were found to fall within the definition of good cause. In this regard, the Commission itself has consistently granted benefits on the basis of good cause when a claimant was faced with an increased workload with no corresponding increase in compensation.

■ To keep his job, the appellant was expected to submit to a massive increase in his work hours to six full days a week, live in substandard housing, assume substantial new responsibilities, and not receive any additional compensation except for an occasional gift of clothing and a limited amount of free meals. The appellant was agreeable to these changes on a temporary basis and quit only when the appellee attempted to impose them on him permanently. Clearly, such an extensive modification of the original terms of the appellant's employment contract constituted circumstances so compelling as to leave no alternative but quitting his job.

The judgment of the Laurel Circuit Court affirming the Kentucky Unemployment Insurance Commission's denying the appellant's claim for benefits was erroneous and its judgment is REVERSED.

COMBS, J., concurs.

GUDGEL, J., concurs with result only.